George H. Parsells, III (038681988)
Vimal K. Shah (040221994)
**McELROY, DEUTSCH, MULANEY & CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Plaintiff, Spencer Falk

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPENCER FALK,<br><br>    Plaintiff,<br><br>  v.<br><br>POINT OF CARE NETWORK, LLC,<br>RICHARD ZWICKEL, and CARMEN<br>MAZZATTA,<br><br>    Defendants. | CIVIL ACTION NO:<br><br><br>**COMPLAINT** |

Plaintiff, Spencer Falk ("Plaintiff" or "Falk"), by his attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, by way of Complaint against defendants, Point of Care Network, LLC ("POCN"), Richard Zwickel ("Zwickel"), and Carmen Mazzatta ("Mazzatta") (collectively "Defendants"), alleges and says:

### THE PARTIES

1. Falk is an individual who resides at 382 Pine Brook Road, Bedford, New York 10506.

2. Upon information and belief, POCN is a limited liability company organized under the laws of the State of Delaware and having its principal place of business located at 4 Campus Drive, Suite 302 Parsippany, New Jersey 07054.

1

3. Upon information and belief, Zwickel is an individual who resides at 7 Nancy Court, Rockaway, New Jersey 07866.

4. Upon information and belief, Mazzatta is an individual who resides at 14 Shaytown Road, Sandyston, New Jersey 07827.

## JURISDICTION & VENUE

5. This Court possesses subject matter jurisdiction based on diversity of the parties' citizenship pursuant to 28 U.S.C. § 1332.

6. Falk is a citizen of the State of New York as he maintains his primary residence in Bedford, New York.

7. POCN is a citizen of New Jersey and Delaware as it is a Delaware limited liability company and has its principal place of business located in Parsippany, New Jersey.

8. Zwickel is a citizen of the State of New Jersey as he resides in Rockaway, New Jersey.

9. Mazzatta is a citizen of the State of New Jersey as he resides in Sandyston, New Jersey.

10. The amount in controversy exceeds $75,000.00, the precise amount will be determined at trial.

11. Pursuant to 28 U.S.C. § 1391, venue in the United States District Court for the District of New Jersey is proper because a substantial part of the events or omissions giving rise to the claim occurred in New Jersey.

## FACTS COMMON TO ALL CLAIMS

### POCN's Business and Its Three-Member Board

12.     Founded in 2014 by Falk and Zwickel, POCN is engaged in the business of marketing and promoting pharmaceuticals and medical devices to physician assistants and nurse practitioners on behalf of manufacturers.

13.     Beginning in or about January 2018, until his wrongful ouster and termination on or about February 26, 2021, Falk served as the President of POCN.  At 64 years of age, Falk was POCN's oldest employee.

14.     Zwickel is, and has been at all relevant times, employed as the Chief Executive Officer of POCN.

15.     Mazzatta is, and has been at all relevant times, employed as the Chief Operating Officer and Chief Financial Officer of POCN.

16.     In connection with his employment, Falk was awarded 2,266,250 Class B Units of POCN, which represents about 22.66% of POCN's outstanding Class B Units.

17.     As a result of Defendants' fraudulent inducement (as discussed in more detail below), Falk's ownership interest was diluted to the point where he presently owns 2,055,567 Class B Units of POCN, representing about 17.9% of POCN's outstanding Class B Units.

18.     Zwickel currently owns 7,705,505 of Class A Units of POCN, which represents 100% of POCN's outstanding Class A Units.

19.     Mazzatta currently owns 1,722,542 of Class B Units of POCN, which represents 15%, of POCN's outstanding Class B Units.

20.     On or about January 1, 2017, an Amended and Restated Operating Agreement of POCN was executed by and among the company's members, Falk, Mazzatta, and Zwickel.  The

stated purpose of the Operating Agreement is to "set forth [the members'] respective rights, powers, duties and obligations…"

21.     Section 3.4 of the Operating Agreement provides that "[e]xcept as otherwise provided in this Agreement…the Company shall not redeem or repurchase the Membership Interest of any Person."

22.     Under the Operating Agreement, POCN is a manager-managed limited liability company, with Zwickel designated as its Manager having the right and authority to direct the business and affairs of the company.

23.     Just three years later, in or around March 2020, POCN was converted from a New Jersey limited liability company to a Delaware limited liability company. In connection therewith, the company's members, Falk, Mazzatta and Zwickel, entered into a Limited Liability Company Agreement dated on or about March 2020 ("LLC Agreement"). Notably, the LLC Agreement was prepared by POCN's attorney.

24.     Section 6.1 of the LLC Agreement provides that the business and affairs of POCN shall be managed, operated, and controlled by or under the direction of a three-member Board comprised of Zwickel, Falk, and Mazzatta.

**Plaintiff's Falk's Employment Agreement To Serve As POCN's President**

25.     In or about January 2018, Falk and POCN entered into an Employment Agreement pursuant to which Falk was employed as POCN's President.

26.     The Employment Agreement, which was prepared by POCN, provides that the "Employment Period" shall run from the Effective Date of January 1, 2018, until terminated pursuant to Paragraph 5(a) of the Employment Agreement.

27.     Paragraph 2 of the Employment Agreement stated that Falk was permitted to engage in other business activities, provided they did not consume "any material amount of time."

28.     Pursuant to Paragraph 3 of the Employment Agreement, it was agreed that Plaintiff would receive compensation as President "[t]hroughout the Employment Period" which included a base annual salary of $250,000, project specific compensation equal to 100% of the net profit earned by POCN on certain enumerated projects, benefits including a 401(k) plan, a pension, insurance (life, medical, dental, and disability), and reimbursed business expenses.

29.     Under paragraph 5(a) of the Employment Agreement, POCN was permitted to immediately terminate Falk's employment for "Cause" upon written notice to Falk.

30.     Paragraph 5(b) of the Employment Agreement provided that in the event POCN sought to terminate Falk's employment for "Cause," it had to first provide him "notice and a reasonable opportunity to cure" *unless* the "Cause" was due to either "embezzlement, fraud or engaging in any conduct that would constitute a crime" or "knowingly and intentionally disclosing confidential information of the Company that has or is reasonably likely to have a material adverse effect on the Company."

31.     Stated otherwise, Paragraph 5(b) of the Employment Agreement required that Falk be given notice and a reasonable opportunity to cure in the event POCN sought to terminate his employment for, among other reasons:

     (i)    "breach or violation of any material term of this Agreement or willful misconduct or gross negligence in the performance of his duties";

    (ii)    "knowingly and intentionally engaging in conduct which is, or is reasonably likely to be, materially injurious to the Company, monetarily or otherwise"; or

(iii) "failure to comply in all material respects with the published workplace policies of the Company as such workplace policies are amended from time to time, in such a manner that is, or is reasonably likely to be, materially injurious to the Company, monetarily or otherwise."

32. Paragraph 14 of the Employment Agreement provides that its terms "and all matters or issues collateral thereto" shall be governed by the laws of the State of New Jersey.

33. Paragraph 15 of the Employment Agreement, captioned "Dispute Resolution/Arbitration," provides that any dispute between POCN and Falk which arises under the Agreement is to be decided through arbitration. Notably, however, the Employment Agreement's Dispute Resolution/Arbitration provision does not state that Falk is giving up his right to bring his claims in court or have a jury resolve the dispute. Therefore, under well-settled New Jersey law, the Dispute Resolution/Arbitration provision is void and unenforceable.

**Defendants' Scheme To Rob Falk's of his Shares, Terminate His Employment, and Destroy His Reputation In the Industry**

34. For years, Falk expended the vast majority of his time and knowledge, and drew upon his contacts in the industry, to promote POCN's products and services. Falk's investment and dedication paid off. During Falk's tenure as President, POCN's business thrived, with gross sales increasing from $629,590 in 2016 to $10,863,017 by year end 2019.

35. Yet, for years, Defendants inexplicably and wrongfully took steps to reduce Falk's role in the business and strip him of his ownership interest. By way of example, Defendants induced Falk into reducing his equity in POCN from 2,175,213 Class B units to 2,055,567 units, under the guise of it being necessary for POCN to obtain a sizable bank loan. To that end, Defendants presented Falk with a Call B Unit Redemption Agreement. In reliance on

Defendants' explanation, Falk executed the Call B Unit Redemption Agreement on or about December 31, 2019.

36.    Under the terms of this redemption, Falk was paid $184,999, or about 88 cents per share.

37.    However, after Defendants succeeded in their malicious plan to strip Falk of his equity interest under false pretenses, Defendants informed Falk that his equity reduction and personal guaranty on the bank loan were not actually necessary. Nevertheless, Defendants did not reinstate Falk's shares.

38.    Not satisfied with just a *reduction* of Falk's ownership interest, Defendants thereafter embarked upon a campaign to eliminate his interest *in its entirety*.

39.    On February 26, 2021, without any prior notice or warning, Mazzatta and Zwickel informed Plaintiff via a phone call that all of his ownership interest would be purchased by POCN. In a state of shock, Falk asked whether he was being fired.  Mazzatta and Zwickel responded, "No, just read the letter" and sent Falk a Separation Agreement indicating that Falk had voluntarily resigned. Falk had not resigned at all.

40.    In advance of this call Mazzatta and Zwickel had also prepared a company announcement which they would shortly thereafter forward to all employees of the company.

41.    Before Falk even had an opportunity to comment on the situation and email, the announcement was indeed to every employee of the company. The announcement falsely stated that Falk had resigned from POCN in pursuit of his "next venture."

42.    In fact, Falk had not resigned from POCN to pursue a "next venture," as Defendants falsely led Falk's long-time business colleagues to believe.

43.    In its entirety, the company-wide email announcement said:

Good Morning POCN Team,

I wanted to inform everyone that Spencer Falk will be leaving POCN effective today. Spencer has been a great partner, contributor to building this company, and our incredible staff, all while helping mold the structure of our business model and culture with us. Spencer has been a colleague and a partner, but perhaps most importantly, a friend – he has always been the guy with so many answers for so many of us for a long time – for some their careers. We have no doubt he will continue to play many of these roles as he takes on his next venture. Spencer brings a level of energy and creativity to nearly everything he touche [*sic*] – his enthusiasm, his know-how, his innate knowledge of this industry are unparalleled. And we are grateful for all he has contributed and for all he has given of himself to this company and to all of us. We know he will always hold a piece of the heart of POCN; as we wish him well for his next chapter.

44. By Defendants' own admission, Falk was not being terminated for cause.

45. By letter dated February 26, 2021 (but erroneously dated February 26, 2020), Defendants offered Falk a buyout of his ownership interest in POCN for the total sum of $1,074,000, paid in monthly installments over a five-year period. This offer meant that Defendants then valued Falk's Class B shares at slightly more than 52 cents per share – an almost 41% reduction in price from what it was in December 2019.

46. Shortly thereafter, Defendants provided Falk with drafts of a Redemption Agreement, Separation Agreement, and Promissory Note detailing the terms of the buyout. These detailed agreements were prepared without Falk's knowledge. It was clear that Defendants' plan was put in place long ago and proceeding at such a feverish pace that there was little, if anything, that Falk could do to stop it.

47. At around 10:00 a.m. on March 1, 2021, the parties discussed the various documents and the terms of the buyout. They also discussed a higher valuation for Falk's stock which Mazzatta indicated would be acceptable.

48.     But in yet another display of callousness, a few hours later, at around 4:00 p.m. on March 1, 2021, Mazzatta and Zwickel advised Falk that he was now being terminated for cause and that his ownership interest in POCN would be unilaterally stripped from him without the payment of any compensation whatsoever.

49.     Defendants wasted no time disparaging Falk to third-parties. By letters dated March 1, 2021, Defendants' attorney sent correspondence to various third-parties informing them that POCN "is investigating the conduct of Spencer Falk and potentially wrongful actions by Mr. Falk." In those letters, Defendants' attorney instructed the third-parties to preserve their records as they may be necessary for use in ensuing litigation.

50.     Those letters were sent with the malicious intention of smearing and disparaging Falk's name, goodwill, and reputation.

51.     As if that was not enough, Defendants canceled Falk's medical insurance effective March 1, 2021, with reckless and malicious indifference. This was critically damaging to Falk as he was, and remains, in treatment for cancer. Defendants' unilateral cancellation of his insurance resulted in Falk having to cancel critically important appointments for medical procedures.

52.     It was not until numerous requests were made by Falk that Defendants finally offered him insurance under the Consolidated Omnibus Budget Reconciliation Act (COBRA) ten (10) days later.

53.     By letter dated March 2, 2021, Defendants confirmed, in writing, that Falk was being terminated for cause pursuant to Paragraph 5 of the Employment Agreement, which expressly deprived Falk of any opportunity to cure.

54.     Defendants have falsely alleged that Falk violated the terms of his employment by, among other things, engaging in activities that were contrary to POCN's business interests and

9

performing services for third-party entities whose businesses were directly competitive to that of POCN. The allegations were entirely false and pretextual in nature.

55. Since receiving the March 2, 2021 notice, discussions between the parties ensued, but Defendants have refused to honor their initial buyout offer. Instead, Defendants have threatened to institute arbitration proceedings.

56. At the time of his termination, Defendants knew that Plaintiff was fighting cancer.

57. Defendants disseminated Plaintiff's medical information and history to third-parties in violation of the Health Insurance Portability and Accountability Act ("HIPAA") and other laws. Plaintiff complained to the Defendants about their unlawful disclosures.

58. The lack of a termination rationale, coupled with a "without cause" buyback/termination, clearly undermines the legitimacy of any post hoc performance-related rationale.

59. Plaintiff has spent the past 42 years of his life building his reputation as a reliable and competent figure in the industry.

60. However, Defendants' unilateral and unlawful termination of his employment without cause, and their disparagement of his name and reputation in the industry, will deny Falk the fruits of his hard work in building customer support, loyalty, and goodwill. Defendants' actions have caused Falk to suffer significant and ongoing damage.

## COUNT ONE
### (Declaratory Judgment)

61. Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

62.     Paragraph 15 of the Employment Agreement, captioned "Dispute Resolution/Arbitration," provides that any dispute between POCN and Falk which arises under the Agreement is to be decided through arbitration.

63.     Notably, however, the Employment Agreement's Dispute Resolution/Arbitration provision does not state that Falk is giving up his right to bring his claims in court or have a jury resolve the dispute.

64.     Therefore, under well-settled New Jersey law including, but not limited to, Atalese v. U.S. Legal Services, 219 N.J. 430 (2014) and Kelly v. Beverage Works NY, Inc., 2014 WL 6675261 (App. Div. Nov. 26, 2014), the Dispute Resolution/Arbitration provision is void and unenforceable.

65.     There is an actual and justiciable controversy between the Plaintiff and Defendants pertaining, which requires immediate resolution.

**WHEREFORE**, Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-02, as follows:

  a.  declaring that Paragraph 15 of the Employment Agreement, captioned "Dispute Resolution/Arbitration," violates New Jersey law and is void and unenforceable;

  b.  declaring that the parties' dispute shall be resolved in this forum;

  c.  awarding Plaintiff compensatory damages;

  d.  awarding Plaintiff attorneys' fees, costs, and interest; and

  e.  awarding Plaintiff any other relief that the Court may deem appropriate.

## COUNT TWO
### (Request for Preliminary and Permanent Injunctive Relief)

66.     Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

67.     New Jersey courts routinely enjoin the termination of business relationships that would violate New Jersey law and public policy.

68.     As detailed in the preceding and subsequent paragraphs of this Complaint, Defendants have, through a series of wrongfully actions, orchestrated a malicious plan to oust Plaintiff from POCN, rob him of his valuable ownership interest in POCN, and destroy his reputation within the industry.

69.     Plaintiff is likely to succeed on the merits of his claims.

70.     Plaintiff will suffer irreparable harm if injunctive relief is not granted and his employment and ownership relationship with POCN is terminated.

71.     Plaintiff will suffer irreparable, non-compensable harm if Defendants are permitted to continue to spread false and disparaging information about the Plaintiff to Plaintiff's contacts in the industry and related industries, for which there is no adequate remedy at law.

72.     Plaintiff cannot be adequately compensated by money damages for the destruction and loss of his business reputation, goodwill, and future business dealings and relationships if Defendants are not enjoined.

73.     Defendants will not suffer harm if the preliminary injunction is issued and will continue to profit by their continued relationships in the same way they have profited in prior years.

**WHEREFORE,** Plaintiff demands that judgment be entered against the Defendants, jointly and severally, as follows:

    a. enjoining Defendants from terminating Plaintiff's employment and ownership interest in POCN;

b. enjoining the Defendants and any of their agents, employees or affiliated entities, from contacting Plaintiff's existing contacts about anything involving Plaintiff;

c. reinstating the status quo that existed prior to February 26, 2021;

d. awarding Plaintiff punitive damages;

e. awarding Plaintiff compensatory damages;

f. awarding Plaintiff attorneys' fees, costs, and interest; and

g. awarding Plaintiff any other relief that this Court may deem just and appropriate.

**COUNT THREE**
**(Breach of Contract)**

74.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

75.    Plaintiff and POCN are parties to the Employment Agreement.

76.    Plaintiff, Zwickel and Mazzatta are parties to the LLC Agreement.

77.    Plaintiff performed all of his obligations under the Employment Agreement and LLC Agreement.

78.    Defendants breached their respective obligations under the Employment Agreement and LLC Agreement by, *inter alia*, terminating his employment with POCN without cause and without an opportunity to cure, and by disregarding his rights as an owner and as a Board member of POCN and orchestrating a takeover of his ownership interest.

79.    Plaintiff has suffered damages as result of Defendants' breaches.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, jointly and severally, for the following relief:

a. awarding Plaintiff punitive damages;

b. awarding Plaintiff compensatory damages;

    c.  awarding Plaintiff attorneys' fees, costs, and interest; and

  d.  awarding Plaintiff any other relief that this Court may deem just and appropriate.

**COUNT FOUR**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

80.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

81.    Plaintiff and POCN are parties to the Employment Agreement.

82.    Plaintiff, Zwickel and Mazzatta are parties to the LLC Agreement.

83.    The law provides that every contract contains an implied covenant of good faith and fair dealing. This means that, even though not specifically stated in the contract, it is implied or understood that each party to the contract must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract.

84.    Defendants' breached the implied covenant by acting in bad faith and with an improper motive to destroy or injure Plaintiff's right to receive the benefits or reasonable expectations of the contracts.

85.    Plaintiff has suffered damages as result of Defendants' breaches.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, jointly and severally, for the following relief:

    a.  awarding Plaintiff punitive damages;

    b.  awarding Plaintiff compensatory damages;

    c.  awarding Plaintiff attorneys' fees, costs, and interest; and

    d.  awarding Plaintiff any other relief that this Court may deem just and appropriate.

## COUNT FIVE
### (Tortious Interference With Contract)

86.     Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

87.     Defendants interfered with Plaintiff's business relationships by informing third-parties that POCN "is investigating the conduct of Spencer Falk and potentially wrongful actions by Mr. Falk."

88.     The interference was factually false, malicious, and aimed at disparaging Plaintiff.

89.     Defendants' interference was inflicted knowingly, intentionally, and without justification.

90.     Plaintiff has suffered damages as result of Defendants' interference.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, jointly and severally, for the following relief:

      a.  awarding Plaintiff punitive damages;

      b.  awarding Plaintiff compensatory damages;

      c.  awarding Plaintiff attorneys' fees, costs, and interest; and

      d.  awarding Plaintiff any other relief that this Court may deem just and appropriate.

## COUNT SIX
### (Tortious Interference With Prospective Economic Advantage)

91.     Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

92.     Plaintiff had a reasonable expectation of advantage from prospective contractual relationships with potential third-parties.

93.     Defendants interfered with Plaintiff's contracts by informing third-parties that POCN "is investigating the conduct of Spencer Falk and potentially wrongful actions by Mr. Falk."

94.     Defendants' interference was inflicted intentionally and with malice and/or without justification or excuse.

95.     Defendants caused the loss of Plaintiff's expected advantage.

96.     Plaintiff has suffered damages as result of Defendants' interference.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, jointly and severally, for the following relief:

    a.  awarding Plaintiff punitive damages;

    b.  awarding Plaintiff compensatory damages;

    c.  awarding Plaintiff attorneys' fees, costs, and interest; and

    d.  awarding Plaintiff any other relief that this Court may deem just and appropriate.

### COUNT SEVEN
**(Violation of N.J.S.A. 34:19-1, Conscientious Employee Protection Act)**

97.     Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

98.     Defendants engaged in widespread violations of New Jersey law including, without limitation, disseminating Plaintiff's medical information and history to third-parties in violation of HIPAA and New Jersey law.

99.     Plaintiff complained and objected to Defendants' unlawful conduct and was retaliated against for his complaints.

100.    Defendants also retaliated against the Plaintiff for his seeking accommodation for his medical condition.

101.    Plaintiff engaged in conduct that is protected by the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.*

102.    As a result of these protected activities, Plaintiff was subjected to a pattern of retaliatory conduct that adversely affected the terms of his employment, and was ultimately terminated for bogus and pretextual reasons.

103.    As a result of the illegal termination and other retaliatory actions, Plaintiff has suffered, and will continue to suffer, damages.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, jointly and severally, for the following relief:

     a.   awarding Plaintiff punitive damages;

     b.   awarding Plaintiff compensatory damages;

     c.   awarding Plaintiff attorneys' fees, costs, and interest; and

     d.   awarding Plaintiff any other relief that this Court may deem just and appropriate.

## COUNT EIGHT
### (Violation of the New Jersey Law Against Discrimination)

104.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

105.    The New Jersey Law Against Discrimination ("NJLAD") prohibits, *inter alia*, practices of discrimination because of age and medical condition.

106.    Plaintiff is a member of at least two protected classes. He is over 40 years of age, and he has a medical condition (cancer) that qualifies as handicapped under New Jersey law.

107.    Defendants, directly and/or through their agents, engaged in intentional discrimination against Plaintiff because of his protected classes.

108.   Defendants also retaliated against the Plaintiff for his seeking an accommodation for his handicap in violation of the NJLAD.

109.   Defendants' conduct constitutes violations of the New Jersey Law Against Discrimination.

110.   As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements, and such other relief as the Court deems just and proper.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, jointly and severally, for the following relief:

a.   awarding Plaintiff punitive damages;

b.   awarding Plaintiff compensatory damages;

c.   awarding Plaintiff attorneys' fees, costs, and interest; and

d.   awarding Plaintiff any other relief that this Court may deem just and appropriate.

<u>**COUNT NINE**</u>
**(Breach of Fiduciary Duty)**

111.   Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

112.   Plaintiff placed trust and confidence in Defendants.

113.   A fiduciary relationship existed between Plaintiff and Defendants.

114.   Defendants held a dominant and superior position over Plaintiff.

115.   Among other things, Defendants owed a duty of loyalty and care to Plaintiff.

116.   Defendants breached their fiduciary duties and/or acted in a palpably unreasonable manner, causing Plaintiff harm.

117.    As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements, and such other relief as the Court deems just and proper.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, jointly and severally, for the following relief:

    a.   awarding Plaintiff punitive damages;

    b.   awarding Plaintiff compensatory damages;

    c.   imposing a constructive trust to hold all moneys and other assets improperly held or previously paid by POCN including, without limitation, as compensation to Zwickel and Mazzatta;

    d.   appointing a custodian, provisional director, a special fiscal agent, or other court appointed fiduciary to, among other things, oversee the operation, finances, management of POCN, to observe all fiduciary duties, and to prevent any wrongful diversion of assets by Defendants

    e.   awarding Plaintiff attorneys' fees, costs, and interest; and

    f.   awarding Plaintiff any other relief that this Court may deem just and appropriate.

<u>**COUNT TEN**</u>
**(Fraud and Fraudulent Inducement)**

118.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

119.    Through fraudulent and misleading statements of fact and material omissions, Defendants induced Falk into reducing his equity in POCN under the guise of a bank loan. More specifically, Defendants told Falk that his equity reduction was necessary for POCN to be able to obtain a sizable bank loan and presented him with a Call B Unit Redemption Agreement that he

relied upon and executed on or about December 31, 2019.  However, after stripping Falk of his equity interest under false pretenses, Defendants informed Plaintiff of the truth, yet, refused to reinstate his original ownership interest.

120.    Plaintiff justifiably relied upon Defendants' misrepresentations and omissions in good faith and to his detriment.

121.    As a result of Defendants' conduct, Plaintiff suffered, and will continue to suffer, damages.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, jointly and severally, for the following relief:

    a.  awarding Plaintiff punitive damages;

    b.  awarding Plaintiff compensatory damages;

    c.  awarding Plaintiff attorneys' fees, costs, and interest; and

    d.  awarding Plaintiff any other relief that this Court may deem just and appropriate.

### COUNT ELEVEN
### (Minority Oppression)

122.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

123.    POCN is a limited liability company organized and existing under the laws of the States of New Jersey and Delaware.

124.    Until his wrongful ouster and termination, Falk owned 2,055,567 Class B Units of POCN, representing about 17.9% of POCN's outstanding Class B Units.

125.    As members and officers of POCN, Zwickel and Mazzatta owed Falk a fiduciary and contractual duty to preserve his interest in the value of POCN.

126.    As aforesaid, Zwickel and Mazzatta have breached their fiduciary and contractual obligations to Falk.

127.    Further, Zwickel and Mazzatta have acted oppressively and/or unfairly toward Falk in his capacity as a member, officer, and employee of POCN.

128.    Defendants have abused their authority as members and officers of POCN and frustrated the reasonable expectations of Falk in seeking to remove him from the position of President and as an employee.  Defendants' actions, conduct, and/or omissions constitute unfair and oppressive conduct.

129.    As a direct and proximate result of Defendants' foregoing willful, wantonly reckless and malicious conduct, Plaintiff has been oppressed, his rights as a member, officer and employee have been violated, and he has incurred and continues to incur damages.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants, jointly and severally, for the following relief:

a.    awarding Plaintiff punitive damages;

b.    awarding Plaintiff compensatory damages;

c.    preliminarily and permanently enjoining Defendants from falsely advising POCN's employees and/or third-parties that Plaintiff has "resigned" from the business or that Plaintiff has engaged in any wrongful action;

d.    declaring that Plaintiff is a minority oppressed member of POCN;

e.    directing that Falk receive fair value in a buyout pursuant to applicable law, or alternatively, dissolution of POCN;

f.    fixing fair value pursuant to applicable law;

g.      directing POCN to issue distributions and interest thereon to Plaintiff from date of commencement of suit to the date of the final judgment;

h.      declaring POCN is required to make future distributions from available cash in an amount at least sufficient for Plaintiff to pay all federal, state and local taxes resulting from income of the company passing through to Plaintiff on his Form K-1;

i.       appointing a custodian, provisional director, a special fiscal agent, or other court appointed fiduciary to, among other things, oversee the operation, finances, management of POCN, to observe all fiduciary duties, and to prevent any wrongful diversion of assets by Defendants;

j.       awarding Plaintiff attorneys' fees, costs, and interest; and

k.      awarding Plaintiff any other relief that this Court may deem just and appropriate.

## COUNT TWELVE
### (Individual Liability As to Zwickel and Mazzatta)

130.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though set forth fully herein.

131.    Defendants Zwickel and Mazzatta are individually and personally liable for each cause of action asserted above as aider and abettors, and as conspirators and participants.

132.    Zwickel and Mazzatta performed, and aided and abetted, in wrongful acts, including engaging in discrimination and retaliation in violation of the NJLAD and CEPA, which caused Falk injury.

133.    Zwickel and Mazzatta were aware, or at least generally aware, of their role in the overall illegal and tortious activity at the time they provided assistance in that activity.

134.   Zwickel and Mazzatta knowingly and substantially assisted in each principal violation of each of the above-referenced causes of action.

135.   As a direct and proximate result of Defendants' foregoing willful, wantonly reckless and malicious conduct, Plaintiff has incurred, and continues to incur, damages.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants Zwickel and Mazzatta, jointly and severally, for the following relief:

l.   awarding Plaintiff punitive damages;

m.   awarding Plaintiff compensatory damages;

n.   preliminarily and permanently enjoining Defendants from falsely advising POCN's employees and/or third-parties that Plaintiff has "resigned" from the business or that Plaintiff has engaged in any wrongful action;

o.   declaring that Plaintiff is a minority oppressed member of POCN;

p.   directing that Falk receive fair value in a buyout pursuant to applicable law, or alternatively, dissolution of POCN;

q.   fixing fair value pursuant to applicable law;

r.   directing POCN to issue distributions and interest thereon to Plaintiff from date of commencement of suit to the date of the final judgment;

s.   declaring POCN is required to make future distributions from available cash in an amount at least sufficient for Plaintiff to pay all federal, state and local taxes resulting from income of the company passing through to Plaintiff on his Form K-1;

t.   appointing a custodian, provisional director, a special fiscal agent, or other court appointed fiduciary to, among other things, oversee the operation,

finances, management of POCN, to observe all fiduciary duties, and to prevent any wrongful diversion of assets by Defendants;

u.      awarding Plaintiff attorneys' fees, costs, and interest; and

v.      awarding Plaintiff any other relief that this Court may deem just and appropriate.

## JURY DEMAND

PLEASE TAKE NOTICE Plaintiff hereby requests trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE Plaintiff hereby designates George H. Parsells, III, as trial counsel.

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Attorneys for Plaintiff, Spencer Falk

By:     /s/ George H. Parsells, III
        George H. Parsells, III

Dated:  October 4, 2021

## CERTIFICATION PURUSANT TO 28 U.S.C. § 1746

Pursuant to Local Civil Rule 11.2 and 28 U.S.C. § 1746, the undersigned certifies that the matter in controversy is not the subject of any other action pending in any court or in any pending arbitration or administrative proceeding.

**McELROY, DEUTSCH, MULVANEY &**
**CARPENTER, LLP**
Attorneys for Plaintiff, Spencer Falk

By:  /s/ George H. Parsells, III
George H. Parsells, III

Dated:  October 4, 2021